**U.S. BANKRUPTCY COURT
DISTRICT OF OREGON
F I L E D**
**August 26, 2005**
**Clerk, U.S. Bankruptcy Court**

**Below is an Opinion of the Court.**

_/s/ Elizabeth L. Perris_
ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: ) | Bankruptcy Case |
| ) | No. 04-37154-elp11 |
| ROMAN CATHOLIC ARCHBISHOP ) | |
| OF PORTLAND IN OREGON, AND ) | |
| SUCCESSORS, A CORPORATION ) | |
| SOLE, dba the ARCHDIOCESE OF ) | |
| PORTLAND IN OREGON, ) | |
| ) | |
| Debtor. ) | |
| ) | |
| ROMAN CATHOLIC ARCHBISHOP ) | Adv. Pro. No. 04-3375 |
| OF PORTLAND IN OREGON, AND ) | |
| SUCCESSORS, A CORPORATION ) | |
| SOLE, dba the ARCHDIOCESE OF ) | |
| PORTLAND IN OREGON, ) | |
| ) | |
| Plaintiff, ) | MEMORANDUM OPINION |
| ) | |
| v. ) | |
| ) | |
| OREGON INSURANCE GUARANTY ) | |
| ASSOCIATION, an unincorporated ) | |
| association, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Roman Catholic Archbishop of Portland (debtor) and

Page 1 - MEMORANDUM OPINION

defendant Oregon Insurance Guaranty Association (OIGA) have filed cross-motions for partial summary judgment, which raise the purely legal question of whether Oregon's net worth limitation contained in ORS 734.510 to 734.710 applies to the claims in this case, subject to a later determination of debtor's actual net worth at the pertinent time.

BACKGROUND

The relevant facts are undisputed.[1] Debtor was insured by two insurers, Mission and Midland, both of which became insolvent in the 1980's. Third parties have asserted and will continue to assert claims against debtor for injuries arising from conduct occurring during the Mission and Midland policy periods (the claims). OIGA has paid approximately $2.6 million to third parties who made claims against debtor.

Debtor filed this adversary proceeding against OIGA, seeking first a declaration that OIGA is obligated to indemnify debtor for amounts debtor becomes obligated to pay on the claims and for any further liability it may have on those claims. Second, it seeks damages for breach of contract, alleging that OIGA breached its duty to indemnify and provide insurance coverage for the claims.

As an affirmative defense, OIGA alleges that, under Oregon statute, it is not obligated to provide coverage for or indemnify debtor for its liabilities on the claims, because of debtor's net worth at the time the insurers became insolvent. OIGA also counterclaims for recovery of amounts OIGA has already paid to third-party claimants who made claims

---

[1] The parties filed a Stipulation of Fact that establishes the facts necessary to a decision on these motions.

Page 2 - MEMORANDUM OPINION

against debtor, which it alleges debtor is liable to pay because of its net worth at the time of the insurers' insolvency. The statutory net worth provisions on which OIGA relies were added to the OIGA statutes by the 2001 legislature.

ISSUE

Whether the 2001 amendment to the OIGA statutes, adding the net worth provisions, applies to claims by and against OIGA that arose under insurance policies issued before the effective date of the amendment.

DISCUSSION

The court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.

The relationship between OIGA and debtor is governed by Oregon statute. OIGA is a guaranty association of insurers created by the Oregon legislature to provide coverage for claims against insureds whose carriers become insolvent. See ORS 734.550.

> The OIGA statutes operate when an insured's liability insurer becomes insolvent. OIGA is an association of insurers created by the Oregon legislature to accumulate and administer funds to pay for the defense of insureds whose insurer becomes insolvent and to pay claims of injured claimants whose claims would have been within the coverage of the insolvent insurer's policy. ORS 734.510(4). The law was passed, among other reasons, to protect claimants and policyholders from loss arising from the insolvency of a liability insurer.

Carrier v. Hicks, 316 Or. 341, 345 (1993).

OIGA is required by statute to assume the obligations of an insolvent insurer and to pay "covered claims." ORS 734.570(1); (2). As

Page 3 - MEMORANDUM OPINION

relevant here, "covered claim" is defined as

> an unpaid claim . . . that arises out of and is within the coverage and limits of an insurance policy to which ORS 734.510 to 734.710 apply and which is in force at the time of the occurrence giving rise to the unpaid claim, made by a person insured under such policy or by a person suffering injury or damage for which a person insured under such policy is legally liable[.]

ORS 734.510(4)(a). As originally enacted, the statute did not allow OIGA to recover from an insured any amounts OIGA had paid on covered claims.

In 2001, the Oregon legislature amended the OIGA statutes to add a net worth limitation, effective January 1, 2002. This limitation appears in two places.

First, the 2001 amendment changed the definition of "covered claim" to exclude from that definition "[a]ny first party claim by an insured whose net worth exceeds $25 million on December 31 of the year next preceding the date the insurer becomes an insolvent insurer[.]" ORS 734.510(4)(b)(D).

Second, the 2001 amendment added a provision allowing OIGA for the first time to

> recover from the following persons the amount of any covered claim paid on behalf of such person under ORS 734.510 to 734.710:
>
> (a) Any insured whose net worth exceeds $25 million on December 31 of the year next preceding the date the insurer becomes an insolvent insurer and whose liability obligations to other persons are satisfied in whole or in part by payments made under ORS 734.510 to 734.710[.]

ORS 734.695(2)(a).

OIGA argues that, because debtor's net worth was more than $25 million at the time the insurers became insolvent, those statutes bar

Page 4 - MEMORANDUM OPINION

debtor's first-party claims[2] against it for indemnification and breach of contract, and entitle OIGA to recover from debtor the amounts OIGA has already paid on third-party claims. Debtor argues that the net worth limitations do not apply to these claims, because the limitations were not effective until January 1, 2002, and the insurers' insolvency occurred in the 1980's. According to debtor, applying the net worth limitations under these circumstances would be a retroactive application of the statute, and the legislature never intended for the statutes to apply retroactively.

1. <u>Would application of the net worth limitation to these claims be retroactive?</u>

"[T]he general rule is that the rights and liabilities of a person who is affected by an event are defined and measured by the statutes in effect at the time of the event." <u>Barnes v. City of Portland</u>, 120 Or. App. 24, 27 (1993).

The legislature may intend, however, that a statute apply retroactively. The question of what constitutes a retroactive application of a statute is a "somewhat slippery one." <u>Vloedman v. Cornell</u>, 161 Or. App. 396, 399 (1999). The term "retroactivity" can be used in two different ways:

---

[2] "First-party claims" are claims made by the insured for benefits, as opposed to claims made by third persons having claims against the insured. See <u>Calif. Insur. Co. v. Stimson Lumber Co.</u>, 2004 WL 1173185 (D. Or. 2004)("first-party" is descriptive phrase distinguishing claims made by insured from claims made by persons having claims against insured); <u>Baxter Healthcare Corp. v. Calif. Ins. Guar. Assoc.</u>, 85 Cal. App. 4th 306 (2000)(reference in California insurance guaranty statute to "first party claim" refers to claim for insurance benefits brought by owner or beneficiary of insurance policy).

Page 5 - MEMORANDUM OPINION

> In the broad sense, the term "retroactive law" refers to any enactment that changes, from its effective date forward in time, the legal effect of past actions. In the narrow sense, the term is limited to enactments that change the effect of past actions automatically upon passage.

State ex rel Juvenile Dep't of Multnomah County v. Nicholls, 192 Or. App. 604, 608 (2004). Under Oregon law, the term is used "in its broadest sense -- that is, to refer to any enactment that changes, from its effective date forward in time, the legal effect of past actions." Id.

Applying this broad view of retroactivity requires a determination of what events, or "past actions," have a legal effect, i.e. give rise to rights and duties. If the events giving rise to the rights and duties of debtor and OIGA asserted in this case arose after the effective date of the 2001 amendment, applying that amendment would not be retroactive.

Because this case involves both first-party and third-party claims, thereby implicating both ORS 734.510(4)(b)(D) and ORS 734.695(2)(a), I will analyze the two types of claims separately.

A. ORS 734.510(4)(b)(D) - covered claim exclusion

OIGA argues that debtor's first-party claims against it for declaratory judgment and breach of contract are barred by ORS 734.510(4)(b)(D), which excludes from the definition of "covered claim" any "first party claim" made by an insured with a net worth of over $25 million at the end of the year before the insurer's insolvency. According to OIGA, because debtor did not bring its first-party claims against OIGA until after the effective date of the 2001 amendment, application of the net worth provision to these claims would be prospective, not retroactive. Debtor argues that the triggering event for purposes of the retroactivity analysis is the insolvency of the

Page 6 - MEMORANDUM OPINION

insurers, which occurred years before ORS 734.510(4)(b)(D) was enacted.

Debtor relies primarily on Rhode Island Insurers' Insolvency Fund v. Leviton Mfg. Co., Inc., 716 A.2d 730 (R.I. 1998), to argue that the insurer's insolvency is the triggering event for purposes of the retroactivity analysis. In Leviton, the insurance policies that covered the claims against the insured had expired before the legislature enacted a net worth limitation much like the one contained in the Oregon statutes. Thereafter, the insurer became insolvent, and the state's guaranty fund made payments on claims against the insured. It then sought to recover the amount of those payments to third parties under the net worth recovery statute. The insured argued that applying the net worth limitation statute to allow recovery would constitute a retroactive application of the statute, because the statute did not exist at the time it was insured by the insurers.

The Rhode Island Supreme Court disagreed. While acknowledging that, at the time the injuries occurred that were ultimately paid by the guaranty fund, the statute prohibited the fund from seeking reimbursement from the insured, the court concluded that it was the date of the insurers' insolvency, not the date of the injury, that triggered application of statute. 716 A.2d at 735.

Factual and statutory distinctions between Leviton and this case make the analysis in Leviton of limited utility here. In Leviton, both the insolvency *and* the assertion of the claim occurred after the effective date of the statute. The court said that "it is the subsequent insolvency of the insurer *and* the concomitant obligation to pay the statutorily mandated claims that triggered the statute." Id. (emphasis

Page 7 - MEMORANDUM OPINION

supplied). The court does not explain how the insolvency of the insurer, without more, gives rise to the guaranty fund's obligation to pay. In the present case, although the insolvency occurred before the effective date of the amendment, the claim against OIGA was not asserted until after the effective date.

Further, the court's decision in Leviton was based at least in part on Liberty Mut. Ins. Co. v. Rhode Island Insurers' Insolvency Fund, 675 A.2d 417, 418 (R.I. 1996)(memorandum), in which the court had held that the date of insolvency was the relevant date for determining whether the 1988 act applied to a particular claim. The court relied on the statutory definition of "insolvent insurer," which meant an insurer that was found insolvent after July 1, 1988. The court concluded, based on the requirement that the insurer be found insolvent after July 1, 1988, that the legislature intended the date of insolvency to be the pertinent date for determining whether the July 1988 act applied. This case is distinguishable, because the Oregon net worth limitation is an amendment to the original OIGA statute, and the amendment does not contain any reference to any particular date.[3]

The Oregon statute requires OIGA "to pay covered claims existing at the time of determination of insolvency of an insurer . . . ." ORS 734.570(1). Because OIGA steps into the shoes of the insolvent insurer, Taylor v. Oregon Ins. Guar. Ass'n, 99 Or. App. 554, 558 (1989), OIGA's rights and obligations with relation to a particular insured cannot arise

---

[3] The original OIGA statute defines "insolvent insurer" as an insurer who is found insolvent after September 9, 1971. ORS 734.510(6)(b).

Page 8 - MEMORANDUM OPINION

before the insurer's obligation arises. The critical question for whether the amendment is being applied prospectively or retroactively is when the insurer's duty to defend or to indemnify arises.

Under Oregon law, the duty to defend is based on both the insurance policy and the facts alleged in the complaint. Ledford v. Gutoski, 319 Or. 397, 399-400 (1994). The insurer must review the complaint to determine whether it alleges conduct that would impose liability for conduct covered by the policy. Id. Thus, there is no duty to defend until the insurer has notice of the claim. Oregon Ins. Guar. Ass'n v. Thompson, 93 Or. App. 5 (1988). OIGA's duty to defend cannot arise any earlier than the insurer's duty, which is upon notice of the claim.

An insurer's duty to indemnify the insured is independent of the duty to defend. Ledford, 319 Or. at 403. The duty to indemnify arises when

> it is determined, as matter of fact, that the damages awarded to the injured party are actually within the policy's coverage. As a result, the mere fact that the pleadings obligate the insurer to defend does not mean that the insurer is also obligated to pay if there is a recovery.

Allan D. Windt, Insurance Claims and Disputes § 6:10 (4th ed. 2004). Thus, OIGA's duty to indemnify cannot arise until it is determined that the insured is obligated to pay the injured party, which necessarily is after the claim is filed that gives rise to the obligation to defend.

The critical event that gave rise to the rights and duties of OIGA with regard to application of the 2001 net worth amendment was the point at which OIGA had a duty to defend and/or to pay. Accord In the Matter of the Ancillary Liquidation of Integrity Ins. Co., 217 Wis.2d 252 (1998) (insurance guaranty net worth limitation's application to claims made

Page 9 - MEMORANDUM OPINION

after effective date of net worth provision was prospective application, despite earlier insolvency, because insurer had no obligation to defend or to indemnify insured until suit initiated). Although insolvency was a necessary predicate to OIGA's obligations, insolvency did not, without more, give rise to an obligation to defend or indemnify debtor. A "statute is not made retroactive by the mere fact that it draws upon an antecedent status in its operation." Rogers v. Dept. of Revenue, 7 Or. Tax 256, 260 (1977), aff'd, 284 Or. 409 (1978). The insurers' insolvency was "merely an antecedent status," but did not by itself give rise to any rights or obligations of either debtor or OIGA.

Debtor argues that the net worth statute's requirement that the insured's net worth be measured as of the end of the year before the insurer's insolvency is an indication that the statute was intended to apply only to insolvencies that occur after the effective date of the amendment. Debtor points out that the insolvency can occur many years before any claim is asserted against the insured for conduct occurring during the coverage period, and it does not make sense to require a determination of net worth many years in the past, at a time when the concept of net worth was not part of the statute. Further, it is possible that an insured could have a net worth of more than $25 million as of the time of the insurer's insolvency,[4] but have a much reduced net

---

[4] Although the question of whether debtor had a net worth of more than $25 million is left for later determination, it is worth noting that debtor's liabilities on the pertinent date may include the claims asserted many years later, if the conduct giving rise to debtor's liability occurred before the date on which net worth is determined. There is a distinction between whether there was a claim against debtor
(continued...)

worth as of the time the claim is asserted against it.

I agree with OIGA's observation at the hearing on these motions that the requirement that net worth be determined as of the end of the year before the insurer's insolvency does not affect retroactivity; it is merely a date the legislature has chosen for testing the insured's net worth. Although the legislature's choice of that date may cause some practical problems, debtor has not convinced me that the insolvency of an insurer by itself gives rise to any rights or obligations of OIGA with regard to covered claims. That is the pertinent inquiry with regard to whether application of a new statute would be prospective or retroactive.

The parties agree that debtor made its first-party claims against OIGA after January 1, 2002, the effective date of the 2001 amendment. Before that date, OIGA had neither an obligation to defend nor an obligation to indemnify. Thus, applying the 2001 amendment to claims asserted against OIGA after the effective date is a prospective, not a retroactive, application of the amendment. OIGA is entitled to partial summary judgment that ORS 734.510(4)(b)(D) applies to debtor's first-party claims against OIGA.

B. ORS 734.695(2)(a) - recovery by OIGA

OIGA seeks in its counterclaim to recover amounts it has paid on third-party claims made against debtor, relying on ORS 734.695(2)(a). It argues that application of the 2001 amendments to allow it to recover under that statute would not be retroactive, because none of the third-party claims were paid until after January 1, 2002, the effective date of

---

[4](...continued)
by an injured party, and whether debtor had any rights against OIGA.

Page 11 - MEMORANDUM OPINION

the amendment. According to OIGA, the triggering event is payment of the claims, not the insolvency of the insurer. Debtor again argues that the pertinent event is the insurers' insolvency, which occurred before the effective date of the amendment.

The question again is what event triggers the parties' rights and obligations with regard to covered claims. As I explained above, OIGA's obligations with regard to covered claims arise when it receives notice of the claims; before that, it does not have any rights against or duties to the insured. Application of the law in effect at the time the rights and obligations are fixed is a prospective, not a retroactive, application of the law.

Before January 1, 2002, OIGA had no right to recover payments made on covered claims; after January 1, 2002, it did if the insured had a sufficient net worth as of the pertinent date. Applying the 2001 amendment to ORS 734.695(2)(a) to claims asserted before the effective date of the amendment would alter the parties' rights and obligations, and thus constitute a retroactive application of the statute.

There is no dispute that two of the claims OIGA paid were tendered to OIGA before the effective date, and the remainder were tendered after.[5] Application of the recovery statute to claims tendered before January 1, 2002 would constitute a retroactive application; application

---

[5] Although the parties did not specifically stipulate to the dates the claims were tendered to OIGA, debtor said in its response to OIGA's Concise Statement of Material Facts that it "accepts" ¶¶ 1-9 of OIGA's statement of facts, which I understand to be a stipulation to the dates set out in OIGA's proof of claim, which was attached to the statement of facts.

Page 12 - MEMORANDUM OPINION

to claims asserted after that date would not. Thus, application of ORS 734.695(2)(a) to claims tendered after January 1, 2002 is a prospective, not a retroactive, application of the statute.

2. <u>Does ORS 734.695(2)(a) apply retroactively?</u>

Because application of the net worth provision of ORS 734.695(2)(a) to the two claims tendered before January 1, 2002 would be a retroactive application of the statute, the next question is whether it should be applied retroactively.

Whether a statute applies retroactively depends on the intent of the legislature. <u>State ex rel Juvenile Dept. of Multnomah County v. Nicholls</u>, 192 Or. App. 604, 609 (2004). The court applies the usual methods for construing statutes to determine whether the legislature intended an enactment to have retroactive application. <u>Id.</u>

Under Oregon law, the court first looks at the text and context of the statute. <u>Id.</u>; <u>PGE v. Bureau of Labor and Industries</u>, 317 Or. 606, 610 (1993). If text and context do not provide a clear answer, the court next looks at legislative history. <u>Nicholls</u>, 192 Or. App. at 609. If legislative history is not helpful, the final step is to apply maxims of statutory construction. <u>Id.</u> With regard to determining whether a statute is intended to apply retroactively, in the final step the court usually resorts to the maxim that a remedial provision presumptively applies retroactively, while a substantive one applies only prospectively. <u>Id.</u>

If, at the first, textual level of analysis, the pertinent statute does not contain an express retroactivity clause, the court considers other language "cues" such as the tense in which the statute has been

Page 13 - MEMORANDUM OPINION

written. Newell v. Weston, 150 Or. App. 562, 569 (1997). The parties agree that there was no express retroactivity provision in the 2001 amendments that added the net worth limitation to the OIGA statute. I have reviewed Senate Bill 977, which added the net worth limitations, and also agree that it does not contain any express retroactivity clause.

Debtor argues the lack of a retroactivity clause strongly suggests that the legislature did not intend the provision to apply retroactively. It also argues that there are verb "tense" clues that the legislature intended the net worth limitation to apply only to those claims that arise from insurers who become insolvent after the effective date of the act. It points to the language of ORS 734.695(2)(a) saying that the limitation applies to parties whose net worth "exceeds" $25 million at the end of the year before the insurer's insolvency. If the legislature intended retroactive application, it argues, it would have said "exceeded." Although debtor does not point it out, the statute also refers to "the date the insurer <u>becomes</u> an insolvent insurer" (emphasis supplied), which could indicate prospective application, rather than "became" an insolvent insurer, which could indicate retroactive application.

A problem with this analysis is that I have already explained that the relevant event for determining application of the amendment is the time a claim is tendered to OIGA, not the time the insurer becomes insolvent. Therefore, while the legislature's use of the terms "exceeds" and "becomes" with regard to insolvency provides some indication that the limitation is not intended to apply retroactively, it is not particularly helpful in discerning legislative intent.

Because the text and context do not provide the answer, I look to legislative history. I agree with the parties that the legislative history does not provide any helpful clues as to the legislature's intention about whether the net worth limitation is to apply retroactively.

That leads to application of maxims of construction. Depending on the substance of the enactment, the court is often

> left to examine whether a provision is "remedial" versus "substantive" in nature. If it is remedial, it presumptively applies retroactively; if it is substantive, it presumptively applies prospectively only. In determining whether a particular enactment is remedial or substantive, we avoid invoking the terms as mere labels and strive instead to examine meaningfully the substance of the legislation.

Nicholls, 192 Or. App. at 610 (citations omitted). Although the distinction between remedial and substantive is not always clear, id. at 613, a substantive provision is one that "impair[s] existing rights, create[s] new obligations or impose[s] additional duties with respect to past transactions . . . ." Kempf v. Carpenters & Joiners Local Union, 229 Or. 337, 343 (1961)(quoted with approval in Joseph v. Lowery, 261 Or. 545, 547 (1972)). A remedial provision, on the other hand, is "one that affects the remedies that a party may receive for a violation of its legal rights[.]" Black v. Arizala, 182 Or. App. 16, 31 (2002), aff'd, 337 Or. 250 (2004).

Not surprisingly, debtor argues that the net worth limitation is substantive, in that it "affects the Archdiocese's rights and obligations for torts allegedly committed in the distant past[,]" Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment at 7, and OIGA argues that it is remedial: "The entire OIGA Act is remedial[; it]

Page 15 - MEMORANDUM OPINION

creates a remedy that never existed." Defendant OIGA's Opposition to
Plaintiff's Motion for Partial Summary Judgment at 10.

The Oregon courts are not consistent in whether a court should look at the statutory scheme as a whole to determine whether an amendment to that scheme is substantive or remedial. In <u>Vloedman v. Cornell</u>, 161 Or. App. 396, 401 (1999), for example, the court considered "the essentially remedial nature of the statute as a whole" in determining that the addition of an attorney fee provision was remedial. On the other hand, in <u>Nicholls</u>, the court recognized the generally rehabilitative focus of the juvenile justice system, but concluded that the enactment of a statute that extended the time a juvenile court could exercise jurisdiction over a youth was substantive, in that it had "the effect of changing the legal obligations and burdens imposed on youth based on his past conduct." 192 Or. App. at 613.

Where, as in <u>Nicholls</u>, an amendment to a statutory scheme has a different purpose than the purpose of the overall statutory scheme, I conclude that the inquiry must focus on the purpose of the changes made by the amendment, not on the purpose of the statutory scheme as a whole.

Although I agree that the OIGA statutory scheme was intended to provide a remedy to entities insured by insurers that became insolvent, <u>see</u> ORS 734.520, the net worth limitation was not enacted as part of that overall scheme, but was enacted later. Its purpose was not to expand or provide a remedy to insureds of insolvent insurers; the purpose was to exclude insureds from its protection who are best able to absorb the loss. See <u>Bd. of County Rd. Comm'r v. Mich. Prop. & Cas. Guar. Ass'n</u>, 456 Mich. 590 (1998)(discussing similar net worth limitation in Michigan

Page 16 - MEMORANDUM OPINION

guaranty statute). That is not a remedial goal.

At the time debtor made its pre-2002 claims against OIGA, it had a right to have OIGA pay those claims, and OIGA had no right of recovery against debtor. With the enactment of the net worth limitation, however, the parties' substantive rights changed. See Agency Budget Corp. v. Wash. Ins. Guar. Ass'n, 93 Wash.2d 416 (1980)(change in definition of covered claim in insurance guaranty statute created new cause of action and corresponding liabilities). OIGA is now entitled to recover amounts paid on covered claims if the insured has a sufficient net worth, a right that did not exist before the enactment.

Because the application of the net worth limitation would subject an insured to a claim by OIGA for reimbursement for amounts paid to third parties, which right did not exist when the claim was asserted, I conclude that the enactment is substantive, in that it affects the legal obligations and burdens imposed on the insured and OIGA. Thus, it is presumptively applied prospectively only.

This case differs from Kentucky Ins. Guaranty Ass'n v. Jeffers, 13 S.W.3d 606 (Ky. 2000), on which OIGA relies. In Jeffers, the legislature amended Kentucky's insurance guaranty association statute to increase the maximum coverage provided by the guaranty association from $100,000 to $300,000. The court concluded that the increased coverage applied to claims pending at the time the amendment became effective, because the increase in coverage was remedial. "Remedial means no more than the expansion of an existing remedy without affecting the substantive basis, prerequisites, or circumstances giving rise to the remedy." 13 S.W.3d at 609. Amendments that provide an increase of coverage were held to be

Page 17 - MEMORANDUM OPINION

remedial and therefore retroactively applicable. Id. at 611.

The net worth limitation is not an expansion of coverage, but a contraction of protection afforded to the insured for those insureds best able to absorb the cost. This contraction of protection is not remedial, as an expansion of coverage was held to be in Jeffers.

CONCLUSION

Application of ORS 734.510(4)(b)(D) to debtor's first-party claims against OIGA is a prospective application. Therefore, OIGA is entitled to partial summary judgment that ORS 734.510(4)(b)(D) applies to debtor's first-party claims against OIGA.

Application of ORS 734.695(2)(a) to claims asserted after January 1, 2002, is a prospective application of that provision. Therefore, OIGA is entitled to partial summary judgment that the net worth limitation of ORS 734.695(2)(a) applies to claims tendered to it after January 1, 2002. ORS 734.695(2)(a) does not apply retroactively. Therefore, debtor is entitled to partial summary judgment that ORS 734.695(2)(a) does not apply to claims tendered to OIGA before January 1, 2002.

Mr. Langslet should submit an order consistent with this ruling.

cc:  Jerry B. Hodson
     John L. Langslet

Page 18 - MEMORANDUM OPINION